# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JENNIFER BRUCE,

     Plaintiff,

v.                                                                    Case No. 8:22-cv-02850-KKM-JSS

MARTIN O'MALLEY,
Commissioner of Social Security,

     Defendant.

_____

## <u>ORDER</u>

Jennifer Bruce filed a claim with the Social Security Administration (SSA) seeking disability benefits based on several medical conditions, including fibromyalgia. She seeks review of the decision of an SSA administrative law judge (ALJ) denying her claim after a hearing. The Magistrate Judge entered a Report and Recommendation, recommending that the ALJ's decision be affirmed. R&R (Doc. 18). Bruce filed timely objections, asserting four alleged errors in the Report and Recommendation. Obj. (Doc. 19-1). On review of the Report and Recommendation, Bruce's objections, and the entire record, I conclude that Bruce has failed to identify a reversible error. Thus, I overrule the objections, adopt the Report and Recommendation, and affirm the ALJ.

## I.   BACKGROUND

On August 27, 2020, Bruce filed a claim for disability insurance benefits with the SSA. Tr. (Docs. 11-2:7)[1] at 245–51. The SSA denied Bruce's claim both initially and on her request for reconsideration. *Id.* at 104–22; *id.* at 124–36. Bruce then asked for a hearing before an ALJ. *Id.* at 153–54. Bruce appeared at the hearing and testified. *Id.* at 49–75. Following the hearing, the ALJ issued a decision finding that Bruce was not disabled and denying her claim for benefits. *Id.* at 25–42. Bruce unsuccessfully sought review by the of the ALJ's decision with the SSA's Appeals Council, *id.* at 1–3, and then sued in federal court, Compl. (Doc. 1). The matter was referred to the Magistrate Judge, who entered a Report and Recommendation on December 29, 2023, recommending that I affirm. *See* R&R. Bruce filed timely objections to the Report and Recommendation on January 11, 2024, Obj.; *see also* (Doc. 19), and I granted leave to file excess pages, (Doc. 20).

The ALJ concluded, and it is undisputed by the Parties, that Bruce suffered from, among other impairments, fibromyalgia. *See* Tr. at 30. Having identified Bruce's impairments, the ALJ then calculated her residual functional capacity. To calculate residual functional capacity, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p." *Id.*

---

[1] The social security transcript was filed as seven separate appendices to Docket 11. Citations to the transcript reference the continuous page numbers located in the bottom right-hand corner of the page.

at 33. She "also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 C.F.R. § 404.1520c." *Id.*

Bruce "alleged that she has constant widespread body pain that limits her ability to perform essentially all physical activities and affects her concentration." *Id.* at 33–34. She also "testified that she stopped working in 2015 due to foot pain that eventually turned into constant widespread body pain and limited [her] ability to perform essentially all functions and activities of daily living." *Id.* at 34. In evaluating these subjective complaints of pain, the ALJ followed a multi-step process required by Eleventh Circuit precedent and the social security regulations. *See id.* at 33. First, she determined "whether there [was] an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques—that could reasonably be expected to produce [Bruce's] pain or other symptoms." *Id.* "[O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms ha[d] been shown, [the ALJ evaluated] the intensity, persistence, and limiting effects of [Bruce's] symptoms to determine the extent to which they limit[ed] [Bruce's] work-related activities." *Id.* "For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms [were] not substantiated by objective medical evidence, [the ALJ considered] other evidence in the record to determine

if [Bruce's] symptoms limit[ed] the ability to do work-related activities." *Id.* "After careful consideration of the evidence, [the ALJ found] that [Bruce's] medically determinable impairments [including fibromyalgia] could reasonably be expected to cause the alleged symptoms." *Id.* That said, the ALJ found that Bruce's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.*

Relevant to the objections before me, the ALJ found that the opinion of Dr. Moureiden, Bruce's rheumatologist, was only "minimally persua[sive]" with respect to the extent of Bruce's symptoms and limitations. *Id.* at 39. The ALJ also considered a functional capacity evaluation performed by physical therapist Anthony P. Pribila, finding the evaluation persuasive that Bruce had "significant limitations in her ability to perform physical work activities," but not to "the extent" described. *Id.* at 40. Based on these considerations as well as others, the ALJ concluded that Bruce "had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b)" subject to two lists of caveats. *Id.* at 33. The ALJ determined that Bruce could only "perform frequent climbing stairs and ramps, balancing, and stooping, occasional climbing ladders, ropes, or scaffolds, kneeling, crouching, and crawling, and have frequent exposure to unprotected heights, dangerous equipment, and vibrations." *Id.* She further concluded that Bruce was only "able to understand, remember, and carry out simple instructions, concentrate, persist,

and maintain pace performing simple, routine tasks, have no interaction with the public, and have only occasional social interaction with coworkers and supervisors with occasional changes in work setting." *Id.*

Based on the calculated residual functional capacity and a vocational expert's testimony, the ALJ determined that although Bruce could not have performed her past relevant work, "[t]hrough the date last insured, considering [Bruce's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Bruce] could have performed." *Id.* at 41. Thus, the ALJ concluded that Bruce was not disabled during the relevant period and denied Bruce's claim. *Id.* at 42.

## II.   LEGAL STANDARDS

### A. Review of a Magistrate Judge's Report and Recommendation

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's Report and Recommendation. 28 U.S.C. § 636(b)(1). If a party files a timely and specific objection to a finding of fact by a magistrate judge, the district court must conduct a de novo review with respect to that factual issue. *Stokes v. Singletary*, 952 F.2d 1567, 1576 (11th Cir. 1992). The district court reviews legal conclusions de novo, even in the absence of an objection. *See Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994);

*Ashworth v. Glades Cnty. Bd. of Cnty. Comm'rs*, 379 F. Supp. 3d 1244, 1246 (M.D. Fla. 2019).

### B. Substantive Social Security Law and Review of ALJ Decisions

To be entitled to social security benefits, a claimant must be disabled—unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A " 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

To regularize claims processing, the SSA has promulgated detailed regulations that establish a "sequential evaluation process" to determine disability. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. *Id.* § 404.1520(a)(4). Under the SSA's regulations, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and,

(4) whether the claimant can perform his or her past relevant work. *Id.* If the claimant cannot perform the tasks required of his or her prior work, the ALJ must (5) decide whether the claimant can do other work in the national economy given the claimant's age, education, and work experience. *Id.* Before proceeding through steps (4) and (5), the ALJ must calculate a claimant's residual functional capacity, which determines the type of work that the claimant can perform despite her impairments. A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 404.1520(g). Bruce's objections concern only the ALJ's calculation of her residual functional capacity.

When a claimant attempts to establish disability based on her pain or other subjective symptoms, including fibromyalgia, a multi-step "pain standard" applies. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); SSR 96–7p, 62 Fed. Reg. 34,483 (July 2, 1996). The first two steps require: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) [a finding] that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson*, 284 F.3d at 1225; *see also* 20 C.F.R. § 404.1529(a)–(b).

There are two different ways to satisfy these initial steps in a fibromyalgia case. First, a claimant can proceed under the 1990 ACR Criteria for the Classification of Fibromyalgia, which requires a showing of:

> (1) A history of widespread pain . . . that has persisted (or that persisted) for at least 3 months . . . .;
> (2) At least 11 positive tender points on physical examination . . . found bilaterally (on the left and right sides of the body) and both above and below the waist . . . .; [and]
> (3) Evidence that other disorders that could cause the symptoms or signs were excluded . . . .

Social Security Admin., *SSR 12-2p: Titles II and XVI: Evaluation of Fibromyalgia*, 77 Fed. Reg. 43,640 (July 25, 2012).

Alternatively, a claimant may proceed under the 2010 ACR Preliminary Diagnostic Criteria, which requires a showing of:

> (1) A history of widespread pain . . . that has persisted (or that persisted) for at least 3 months . . . . ;
> (2) Repeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and
> (3) Evidence that other disorders that could cause the symptoms or signs were excluded . . . .

*Id.* If the ALJ determines that the claimant has a "medically determinable impairment" that could reasonably produce the pain or other symptoms, then the ALJ proceeds to step (3) and evaluates the extent to which the "intensity and persistence" of those symptoms

limit the claimant's ability to work. 20 C.F.R. § 404.1529(a)–(c). At this stage, the ALJ considers the claimant's history, the medical signs and laboratory findings, the claimant's statements, statements by medical sources, and other evidence of how the pain affects the claimant's daily activities and ability to work. *Id.* § 404.1529(c).

If the ALJ's determination that a claimant is not disabled is supported by substantial evidence, it must be upheld so long as the determination applies the correct legal standard. *See* 42 U.S.C. § 405(g); *Wilson*, 284 F.3d at 1221. "The phrase 'substantial evidence' is a term of art" that "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). Thus, in reviewing the Commissioner's decision, I "may not decide the facts anew, re-weigh the evidence, or substitute my own judgment for that of the [ALJ]," "[e]ven if [I] find that the evidence preponderates against the [ALJ's] decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). No such deference applies to legal conclusions, and the ALJ's "failure to apply the correct law" or to provide "sufficient reasoning" to determine that he or she has conducted "the proper legal analysis" requires reversal. *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## III.   ANALYSIS

Bruce asserts four objections to the Magistrate Judge's analysis in the Report and Recommendation. *See* Obj. at 1–2. The first and fourth objections relate to the ALJ's assessment of medical opinions in the record. *Id.* at 1–4, 11–12. The second and third objections relate to the ALJ's analysis of Bruce's fibromyalgia. *Id.* at 4–11. I address each pair of objections in turn.

### A. The ALJ Correctly Applied the Law on the Evaluation of Medical Opinions and Reached Conclusions Supported by Substantial Evidence

Bruce objects that the ALJ misapplied the law on evaluating medical opinions and that the ALJ wrongly evaluated the consistency of Moureiden's opinion with other medical evidence in the record. I disagree on both points.

#### 1.  The ALJ Correctly Applied the Law on the Evaluation of Medical Opinions

Bruce first objects that the ALJ misapplied the law by using two different standards to evaluate Pribila's functional capacity evaluation and the prior administrative medical findings (a term of art that refers to opinions by state medical consultants) of Dr. Isaac Moore. Obj. at 2–4. Bruce argues that the ALJ's discussion of Bruce's relationship to Pribila—that Pribila's opinion resulted from a "one-time evaluation"—obligated the ALJ to expressly consider the same factor when discussing Moore's findings. *Id.* at 2. Reviewing

the ALJ's decision de novo as to whether it correctly applied the law governing consideration of medical opinions, I disagree.

Bruce's argument fundamentally misunderstands the relevant social security regulations. Those regulations list five factors that the ALJ "will consider [when evaluating] medical opinion(s) and prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(c). Subsections 404.1520c(b)(2) and (b)(3) describe how the ALJ must explain this consideration. The first two factors, supportability and consistency, are the "most important." *Id.* § 404.1520c(b)(2). "Therefore, [the ALJ] will explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." *Id.* Additionally, the ALJ "may, *but [is] not required to*, explain how [she] considered [three additional factors], as appropriate, when [she] articulate[s] how [she] consider[s] medical opinions and prior administrative medical findings." *Id.* (emphases added). So the ALJ generally need not explain how she considered the three other factors so long as she addresses supportability and consistency. A different rule applies when the ALJ "find[s] that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." *Id.* § 404.1520c(b)(3). In that scenario, the ALJ "will articulate how [she] considered the

[three additional factors] for those medical opinions or prior administrative medical findings." *Id.*

According to Bruce, the ALJ erred by considering the third factor, relationship with the claimant, with respect to Pribila but not to Moore because "[o]nce the ALJ invokes one of the [additional three] factors, they must be applied to all of the opinions being considered." Obj. at 3. The idea appears to be that discussing one of the other three factors means that the ALJ must have found the supportability and consistency of the different medical opinions to be in equipoise. Thus, Bruce says, "[i]f the extent of [the] relationship must be utilized in assessing [Pribila's opinion], then the same criteria must be utilized when assessing [Moore's findings]." *Id.* at 3–4. But that is not what the regulations say.

The ALJ must discuss how supportability and consistency factor into her evaluation of a medical opinion or finding. *See* 20 C.F.R. § 404.1520c(b)(2). And when differing opinions or findings are equally persuasive based on the two most important factors, the ALJ must discuss how she breaks the tie by reference to the three other factors. *Id.* § 404.1520c(b)(3). But there is no evidence in the record to suggest that the ALJ considered Pribila's evaluation and Moore's findings equally persuasive based on supportability and consistency. Indeed, the ALJ's decision reveals exactly the opposite. *Compare* Tr. at 39 (Moore's findings "provided good internal support for his assessment with a detailed and thorough discussion of the evidence that he relied upon, which provides

significant probative value" and were "largely consistent with [other medical] evidence, which shows treatment for musculoskeletal, immune, and rheumatological conditions primarily causing pain and stiffness"), *with id.* at 40 (explaining that although Pribila's evaluation was "internally supported, it [was] very inconsistent with the other medical evidence"). In other words, there was no need to apply § 404.1520c(b)(3)'s tiebreaking rule because Moore's opinion came out ahead after considering the two most important factors. That the ALJ chose to mention another reason drawn from the third factor when discussing Pribila's evaluation did not oblige her, without more, to discuss that same reason with respect to Moore's findings.

### 2. Substantial Evidence Supported the ALJ's Conclusion about the Persuasiveness of Moureiden's Opinion

Next, Bruce objects that ALJ erred in evaluating Moureiden's opinion. Obj. at 11–12. Bruce challenges the ALJ's conclusion that the "extreme limitations" contained in Moureiden's opinion were "inconsistent with . . . imaging studies showing no more than moderate musculoskeletal abnormalities," *see* Tr. at 39–40, and argues that Moureiden's opinion was wrongly discounted as "not consistent with the other evidence," *id.* at 39, because other physicians "did not make the same physical findings [as Moureiden]," Obj. at 11. Bruce also contends that "[i]t is not fair . . . for the [Report and Recommendation] to allow the ALJ to require . . . inapplicable medical signs, the lack of which excludes other

causes and support[s] . . . the determination of a . . . fibromyalgia impairment." *Id.* at 11–12. These objections also fail.

Bruce concedes that her first subpoint simply restates Objection II: that the ALJ allegedly improperly considered the imaging results in determining the severity of Bruce's fibromyalgia symptoms. *See id.* at 11 (cross-referencing Objection II). Her third subpoint sounds in a similar theme. I overrule those objections for the same reasons, discussed in Section III.B.1 below, that I overrule Objection II.

Bruce's second subpoint—that the ALJ erred by considering the consistency of Moureiden's opinion with medical evidence provided by other of Bruce's caregivers—fares no better. Bruce contends that because this other evidence was provided by "a diabetes doctor, a gastroenterologist, an ARNP at Florida Cancer Specialists, and a primary care internist, all of whom were concerned with medical issues other than [Bruce's] fibromyalgia," it would have been "foolish" for the ALJ to rely on it as the basis for a finding of inconsistency. Obj. at 11. This argument amounts to a request that I reweigh the evidence of consistency between Moureiden's "extreme limitations" and the less severe limitations demonstrated by other medical evidence in the record. But it is not my role to second guess the ALJ's factual findings. 42 U.S.C. § 405(g); *Biestek*, 139 S. Ct. at 1154. The ALJ was entitled to conclude that Moureiden's opinion was unpersuasive in the light of the gulf between the extreme limitations Moureiden observed and those shown by other

medical evidence. Evidence—including from Bruce's primary care physician—indicating that Bruce's limitations were less severe than suggested by Moureiden was more than substantial evidence on which to base a conclusion of inconsistency. Bruce's only argument contra, that the other sources of medical evidence were not closely monitoring her symptoms because they knew Moureiden was handling rheumatology, proposes exactly the kind of fine-grained credibility determination that the ALJ was better situated to decide. That Bruce (or anyone else) might have evaluated the evidence differently and come to a different conclusion does not mean that the ALJ erred. *See Biestek*, 139 S. Ct. at 1154; *Bloodsworth*, 703 F.2d at 1239.

## B. The ALJ Properly Analyzed the Extent of Bruce's Symptoms and Limitations

Bruce's second pair of objections concerns the ALJ's evaluation of evidence related to Bruce's fibromyalgia symptoms. Bruce argues that the ALJ improperly relied on a particular piece of objective evidence—"largely unremarkable" imaging results—to conclude that the extent of Bruce's symptoms were less severe than suggested by her

subjective claims. Obj. at 4–8. Bruce also contends that the ALJ ignored objective evidence of fibromyalgia present in the record. *Id.* at 8–11. I overrule both objections.

### 1. The ALJ Properly Considered Bruce's "Largely Unremarkable" Imaging Results in Analyzing the Extent of her Symptoms and Limitations

Bruce first argues that the ALJ's reliance "on the lack of (or minimal) imaging results as a basis for concluding that [Bruce's] fibromyalgia [was] not disabling" was error because those results "are part of the necessary criteria for diagnosis of fibromyalgia in the first place." Obj. at 4. I disagree.

At step (2) of the pain test, the ALJ determined that Bruce's "medically determinable impairments [including fibromyalgia] could reasonably be expected to cause the alleged symptoms." Tr. at 34. Bruce does not object to this portion of the analysis. At the final step, though, the ALJ "evaluate[d] the intensity, persistence, and limiting effects of [Bruce's] symptoms to determine the extent to which they limit[ed] [Bruce's] work-related activities." Tr. at 33. Considering both Bruce's subjective claims and the entire record, the ALJ concluded that Bruce's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 34. Bruce contends that the ALJ's consideration of one piece of objective evidence—the fact that "imaging of [Bruce's] pelvis, hands, shoulders, knees, and lumbar spine were largely unremarkable" and

16

demonstrated at most "moderate degenerative changes," Tr. at 34–35—was reversible error. She concedes that "[t]he ALJ's finding that the imaging [was] largely unremarkable is accurate" but argues that considering the results at all was improper because they are "essential to the diagnosis of fibromyalgia in the first place." Obj. at 8.

Both the Eleventh Circuit and the SSA have recognized that fibromyalgia is characterized by a lack of objective evidence. *See generally* SSR 12-2p; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (explaining that a "hallmark" of fibromyalgia is the "lack of objective evidence"). But although "a brief analysis and over-emphasis upon objective findings [is] inappropriate," *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (11th Cir. 2007), that is not what happened here. Instead, after "careful consideration of the entire record," Tr. at 33, including Bruce's subjective statements, *id.* at 36–37, the ALJ determined that "the medical evidence confirms that [Bruce had] some pain and stiffness associated with [her] impairments, but it does not support [Bruce's] allegations of disabling physical symptoms and limitations," *id.* at 37. The ALJ considered the imaging results as a single datapoint in addition to (1) various medical examinations and opinions; (2) Bruce's treatment history over time; (3) Bruce's statements about the everyday activities that she could still perform despite her impairments; and (4) Bruce's testimony at the hearing about

her symptoms and limitations. *Id.* at 36–37. That is exactly the kind of measured, holistic analysis that both the social security regulations and Eleventh Circuit precedent requires.

Bruce argues that the ALJ must blind herself to imaging results that rule out other potential causes of pain because fibromyalgia "could never be disabling" if such evidence was always given controlling weight. *See* Obj. at 8. To be sure, it might well be error to overemphasize "largely unremarkable" imaging results for exactly that reason. But the Eleventh Circuit has never held that an ALJ cannot consider otherwise relevant evidence when evaluating the extent of a claimant's symptoms just because that evidence is also relevant to establishing an impairment at an earlier step of the pain test. That there is no limiting principle to Bruce's novel theory cuts strongly against it. I can see no reason why almost all objective evidence could not be excluded on the same rationale. For example, medical evaluations or a course of treatment will often be just as important to demonstrating the existence of fibromyalgia as the complained-of imaging results. Whatever analysis the law requires, it does not mandate that the ALJ rely on a claimant's subjective statements to the exclusion of all other evidence. *See* 20 C.F.R. § 404.1529(c); *see also, e.g., Morales v. Comm'r of Soc. Sec.*, 799 F. App'x 672, 677 (11th Cir. 2020) (per curiam) (approving finding that subjective complaints conflicted with objective evidence because "[o]bjective medical evidence 'is a useful indicator' to assist the Commissioner in

evaluating the intensity and persistence of symptoms and pain" (quoting 20 C.F.R. § 404.1529(c)(2))).

The ALJ did not overly emphasize Bruce's "largely unremarkable" imaging results or give them determinative or undue weight. She merely considered the results as part of the record as a whole—one piece of a complicated mosaic of objective and subjective evidence. The ALJ's thoughtful consideration was not error.

### 2.  The ALJ did not Ignore Relevant Objective Evidence

Finally, Bruce objects that the ALJ ignored several pieces of objective evidence about the extent of her fibromyalgia symptoms. Obj. at 8–11. She highlights several elements of Pribila's functional capacity evaluation (a heart rate measure and an anti-manipulation protocol called Waddell's Sign) as well as a particular type of antibody, the elevated presence of which in a claimant's blood she says corresponds to fibromyalgia severity. *Id.* at 9–10. Neither argument holds up.

As explained above, the ALJ conducted a detailed evaluation of Pribila's medical opinion that discussed the mandatory factors of supportability and consistency. *See* Tr. at 40. Indeed, the ALJ concluded that Pribila's evaluation was somewhat persuasive based on its internal support even though his conclusions were "very inconsistent with the other medical evidence." *Id.* The objective evidence Bruce surfaces at best cuts to the internal

supportability of Pribila's evaluation. It does not demonstrate that the ALJ's conclusion as to the overall persuasiveness of the evaluation was not supported by substantial evidence.

Evidence regarding the "anti-SGC IgG" antibody is also a nonstarter. Bruce provides evidence that the antibody was detected in her blood at elevated levels during a single round of blood tests in 2016, years before she filed her claim. Obj. at 10–11; Tr. at 731. She also concedes that the lone study relied on to prove the antibody's relevance was not yet published when the ALJ issued her decision. Obj. at 10. It cannot have been error for the ALJ to have "ignored" a piece of evidence because she did not possess extra-record information, especially when that information may well not have even been public knowledge at the time.

## IV.   CONCLUSION

In sum, the ALJ evaluated Bruce's disability claim consistent with the governing law and after considering the entire record. The ALJ's conclusion that Bruce's suffered from fibromyalgia but had symptoms and limitations somewhat less severe than suggested by her subjective statements was supported by substantial evidence.

After conducting a careful and complete review of both the Report and Recommendation and Bruce's objections, 28 U.S.C. § 636(b)(1), it is **ORDERED**:

1.   Bruce's objections to the Magistrate Judge's Report & Recommendation (Doc. 19-1) are **OVERRULED**.

2.     The Magistrate Judge's Report and Recommendation (Doc. 18) is

**ADOPTED** and made a part of this Order for all purposes.

3.     The Commissioner's decision is **AFFIRMED**.

4.     The Clerk is directed enter **JUDGMENT** in the Commissioner's favor; to

terminate any pending motion and deadline; and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on January 30, 2024.

Kathryn Kimball Mizelle
United States District Judge